IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEGGY LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | 2: 04-cv-964 |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court for consideration and disposition is Defendant's MOTION FOR SUMMARY JUDGMENT *(Document No. 22)*. Plaintiff Peggy Love ("Love") alleges discrimination based on gender with respect to a decision by Defendant United Parcel Service ("UPS") to transfer her from a downtown Pittsburgh sales territory to the Bethel Park territory. After a thorough review of Defendant's Memorandum in Support of UPS' Motion for Summary Judgment *(Document No. 23)*, Plaintiff's Brief in Opposition *(Document No. 29)*, Defendant's Reply Brief *(Document No. 31)*, the Statement of Material Undisputed Facts *(Document No. 24)*, Plaintiff's Counterstatement of Material Facts and Additional Facts *(Document No. 30)*, UPS' Counterstatement *(Document No. 32)*, and the appendices attached thereto, the Court concludes that the motion will be GRANTED.

### BACKGROUND

Ms. Love has been employed in the Laurel Mountain District of UPS since 1985. Each district within UPS has its own staff and operating functions. Love worked in a series of clerical positions until she earned a degree in Human Resources in August 2000. At that time, Love

received a promotion to a job as Sales Representative. Love was promoted again in October 2001 to a position as an Account Representative and assigned to a specific geographic sales territory in downtown Pittsburgh. Account Representative compensation is 80% fixed salary plus 20% non-discretionary bonus based on sales volume. Love reported to Scott Guldin, who in turn reported to Barry Kastner, the district sales manager. Plaintiff states that Kastner would routinely "high-five" men in the department and say things like "my boy, Jim Demarco." Kastner asked UPS security to investigate Plaintiff's entries into a company database, while similar accusations Love made against Demarco were not investigated by security. Plaintiff states that all three of the investigations pursued by Kastner during his tenure in the district were agaisnt women.

At issue in this case is UPS' decision, effective January 1, 2003, to assign Love to the Account Representative position in the Bethel Park territory. In January 2004, Love was reassigned again, from Bethel Park to the Human Resources department.[1] Love was, at latest report, still employed by UPS in Human Resources.

Plaintiff contends that her performance in the downtown Pittsburgh territory during 2003 was satisfactory. She states that the territory was in a deteriorated condition due to the poor performance and falsification of records of her predecessor, William Trimble.[2] Love was able to restore business from several customers alienated by Mr. Trimble. Plaintiff concedes that she failed to meet two UPS initiatives, Project Brown and Project Brown Tail, but asserts that she was hampered by Trimble's conduct and that numerous other salespersons also failed to meet

---

[1] Love does not challenge the reassignment to Human Resources.

[2] Trimble had been promoted to a position as Major Account Executive.

their goals. Love was below standard by six minutes per day in customer visits and failed to complete one of six required self-assessments. Love met her volume and revenue goals for every quarter she worked the downtown territory. Her growth rate in the fourth quarter of 2002 was 5.1% and in December 2002, it was 5.9%. Love's growth rate for all of 2003 was 1.1%, compared to 3.2% for the region as a whole. Scott Guldin believed that Love's performance in the territory was not satisfactory. Guldin cited deficiencies in actual sales, sales initiatives, sales skills, sales planning and responsiveness. Love's Quality Performance Review indicated that improvements were needed in revenue growth, assessments and critical skills. By the end of the third quarter of 2002, Guldin recommended to Kastner that Love be reassigned to Bethel Park, a less-demanding region where she could better progress as a salesperson. Kastner agreed to a lateral transfer, based on Guldin's recommendation, Love's lack of performance on sales initiatives, weak Making Major Sales ("MMS") scores, downward trend in sales, low percentage effectiveness, low percentage growth, and poor assessments. Love cites to several angry exchanges with Kastner, in which he was very critical of her performance. Love also cites to alleged flaws in Guldin's performance.

      Essentially, Love and James Demarco, the male Account Representative in Bethel Park, switched territories.[3] In March 2003, Love's base pay was increased from $3,075 to $3,525. Love had previously acknowledged that she could be transferred to meet UPS needs, at the discretion of UPS management. Demarco preferred to remain in the Bethel Park territory. In fact, after Love transferred in Human Resources, Demarco returned to the Bethel Park territory.

---

    [3]UPS management stated that Demarco was more "seasoned." While Demarco performed significantly better on selling skills assessments, his sales experience was less lengthy than Love's and Demarco had not met his sales targets in 2002.

While the downtown territory provided a greater number of potential sales opportunities, those potential clients were harder to penetrate. Demarco's actual experience was that his sales-related bonuses from Bethel Park exceeded his bonuses during the year he was assigned to the downtown region. There is no record evidence which indicates that Love's actual bonuses or total compensation declined while she was in the Bethel Park territory.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

Plaintiff does not contest dismissal of her claim under the Equal Pay Act. However, Plaintiff continues to assert causes of action under Title VII and the Pennsylvania Human Relations Act (PHRA), based on the January 2003 transfer from downtown to Bethel Park. The same legal standards govern the Title VII and PHRA claims. *Stultz v. Reese Brothers, Inc.*, 835 A.2d 754, 759 (Pa.Super. 2003). The familiar McDonnell-Douglas burden-shifting approach applies. Under the *McDonnell Douglas* burden-shifting framework, plaintiff must first make out a *prima facie* case of discrimination, by establishing that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably. *Sarullo v. United States Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003).[4] If accomplished, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the alleged adverse employment action. If the employer proffers a legitimate reason for its action, the plaintiff must then show that the proffered legitimate reason(s) are merely a pretext for discrimination. *Simpson v. Kay Jewelers Div. of Sterling, Inc.,* 142 F.3d 636, 644 n.5 (3d Cir. 1998).

The Court concludes that Love cannot make out the elements of a prima facie case because Love cannot establish that she suffered an adverse employment action. An "adverse employment action" is one that is serious and tangible enough to alter the terms, conditions,

---

[4]In *Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999), the U.S. Court of Appeals for the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case[,]" and that "a *prima facie* case cannot be established on a one-size-fits-all basis." *Jones*, 198 F.3d at 411.

privileges or compensation of the employment.  *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).  In *Langley v. Merck & Co.*, 2006 WL 1647015 (3d Cir. June 15, 2006) (unpublished), the Third Circuit recently held: "Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions."  In *Wardle v. County of Montgomery*, 2006 WL 2171976 (E.D. Pa. 2006), the Court explained that while a lateral transfer might sometimes qualify as an adverse employment action, the burden is on the plaintiff to produce enough evidence to allow a reasonable jury to conclude that the transfer caused harm sufficiently serious to be a constitutional injury.  *Id.* at *7-8 (citing *Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001)).  Plaintiff's subjective belief that a transfer is less desirable or demeaning cannot suffice.  *Id.*  A reassignment can become an adverse employment action under Title VII only if the plaintiff can show a significant detrimental impact.  *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  *See also Burlington Northern & Santa Fe R.R. Co. v. White*, 126 S. Ct. 2405 (2006) (discussing whether reassignment constituted an adverse action in context of Title VII retaliation claim).

      The record clearly demonstrates that Love received a lateral move, switching territories with another Account Representative.  Love has not produced evidence to show *any* adverse impact, let alone an adverse impact significant enough to constitute a constitutional injury.  Love retained the same title, responsibilities and salary.  After only a few months in the Bethel Park territory, Love's base salary increased significantly.  Love argues that the transfer to Bethel Park deprived her of additional bonuses, which reduced her earning potential.  On the record evidence before the Court, no reasonable fact-finder could reach this conclusion.  Demarco testified, without contradiction, that the actual bonuses he received in the Bethel Park territory were

greater than his bonuses from the downtown territory. While downtown offered more *potential*, those potential customers were more difficult to penetrate. *See Martin v. Dupont Flooring Sys.*, 2004 WL 1171208 *3 (D. Conn. May 25, 2004) (requiring evidence from which a reasonable jury could find that earning potential was materially diminished). Love has not proven that her bonuses were markedly higher in the downtown territory. Further evidence that the transfer to Bethel Park was not an adverse employment action is the fact that Demarco preferred to remain in that territory. In fact, Demarco left the downtown territory and returned to Bethel Park when that territory became available after Love was assigned to Human Resources. Accordingly, there is no genuine issue of material fact regarding whether Love suffered an adverse employment action and UPS is entitled to summary judgment.

  Even assuming, arguendo, that Love could demonstrate that she suffered an adverse employment action, UPS would still be entitled to summary judgment because Love cannot meet her burden to prove the disparate treatment element of her prima facie case.[5] Disparate treatment under Title VII can be proven when a person in a protected group is singled out and treated less favorably than a similarly situated comparator on the basis of an impermissible criterion. *E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 346-47 (3d Cir. 1990). Proof of an employer's discriminatory motive is a critical component of this analysis. *Id.* The employer's discriminatory intent may be shown by direct or circumstantial evidence. *Id.* at 347. In this case,

---

[5]There is no dispute that Love is a member of a protected class. The Court agrees with Plaintiff that Love was qualified for the position. At the prima facie case stage, Love has demonstrated that she has the necessary experience and qualifications to hold the Account Representative position. Indeed, UPS' argument is severely undercut by the fact that UPS transferred Love to another Account Representative position.

Love has failed to produce any evidence of disparate treatment by UPS. The person assigned to the Bethel Park territory, both prior to and subsequent to Love's tenure, was a male. The persons assigned to the downtown territory, both prior to and subsequent to Love's tenure, were males. UPS points out that position transfers within UPS are extremely common and that 31 individuals in the Laurel Mountain District business development department, mostly male, transferred territories in 2002-2003. There is no evidence that Plaintiff was singled out for reassignment due to her gender. Accordingly, no reasonable factfinder could conclude that similarly situated male employees were treated any differently or more favorably and UPS is entitled to summary judgment.

  Even assuming, arguendo, that Love could establish a prima facie case, UPS would still be entitled to summary judgment because Love has not met her burden to produce evidence that shows that UPS' reasons for the transfer were pretextual. Both Guldin and Kastner recited a litany of legitimate, non-discriminatory reasons for the transfer. Thus, the burden would shift back to Plaintiff to show pretext. To show pretext, plaintiff must point to some evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the discharge. *Simpson*, 142 F.3d at 644; *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions that a factfinder could conclude that employer's reasons are unworthy of credence).

  In this case, both of Love's superiors deemed her performance to be unsatisfactory. Love testified in her deposition that she realized that they were unhappy with her performance. There

is undisputed evidence that Love failed to meet certain sales initiatives and that her sales growth for the year was below the district average. The person chosen to replace her, Demarco, received the maximum score of 11 on the assessment for Making Major Sales, while Love's score was a 5 - moderate.  Thus, under UPS' evaluation, Demarco was viewed as being far more able to make major sales than Love.  In response, Plaintiff points only to the fact that Demarco had less experience as an Account Representative and that he had failed to meet his volume and revenue numbers in the Bethel Park territory.  Love contends that she was performing satisfactorily and that UPS had no real reason for transferring her.

       The Court of Appeals has made clear that disagreements regarding an employer's business judgment cannot suffice to establish a claim for discrimination.  *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).  The disputes between Love and UPS boil down to differing perceptions about Love's job performance and whether the aspects of the job that Love performed acceptably outweighed the areas in which she was admittedly deficient.  For example, Love focuses on her performance in the last quarter and last month of 2003, while UPS focuses on her sales for the entire year.  The Court has been instructed to closely evaluate the evidence as a pretext for discrimination, but to be cautious about interfering with employers' subjective evaluations of their employees.  The anti-discrimination laws do not transform this Court into a super-personnel department vested with the authority to second-guess the wisdom of business decisions.  *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).  On this evidentiary record, no reasonable factfinder could conclude that UPS' reasons were so implausible that they must have been a pretext for discrimination.

## CONCLUSION

Plaintiff does not contest the entry of summary judgment on the Equal Pay claim. Summary judgment must be granted on the Title VII and PHRA claims, as well. The evidence of record does not provide any reasonable basis to conclude that UPS' business decision to transfer Love to the Bethel Park territory was an adverse employment action, constituted disparate treatment due to Love's gender, or was a pretext for discrimination.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEGGY LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | 2: 04-cv-964 |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 28th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Defendant's MOTION FOR SUMMARY JUDGMENT *(Document No. 17)* is **GRANTED**. The clerk shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Joel S. Sansone, Esquire
Email: joelsansone03@msn.com

Joseph P. Milcoff, Esquire
Email: jmilcoff@reedsmith.com
Kathy K. Condo, Esquire